**FILED**

SEP 13 2007
SEP 13 2007
WAYNE R. ANDERSEN
U. S. DISTRICT COURT JUDGE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>vs. )<br>)<br>TINA CHANEY ) | No. 07 CR 364-8<br><br>Judge Wayne R. Andersen |

## PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant TINA CHANEY, and her attorney, JOHN T. GONNELLA, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2. The indictment in this case charges defendant with conspiracy to commit marriage fraud, in violation of Title 18, United States Code, Section 371 (Count One); and marriage fraud, in violation of Title 8, United States Code, Section 1325(c) and Title 18, United States Code, Section 2 (Count Ten).

3. Defendant has read the charges against her contained in the indictment, and those charges have been fully explained to her by her attorney.

4. Defendant fully understands the nature and elements of the crimes with which she has been charged.

## Charge to Which Defendant is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count One of the indictment. Count One charges defendant with conspiring to commit marriage fraud, in violation of Title 18, United States Code, Section 371.

## Factual Basis

6. Defendant will plead guilty because she is in fact guilty of the charge contained in Count One of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish her guilt beyond a reasonable doubt:

Beginning no later than September 2002, and continuing through in or about June 2007 (the "Relevant Time Period"), at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, Tina Chaney did knowingly conspire with others, including coconspirators Jeremy Starnes, Tammy Daniels, Brooke Thompson, Fred Chaney, Cari Arrieta, Bridgette Thompson, Linda Laskowski, and Amy Dupree, to commit certain offenses against the United States, namely, to knowingly enter into marriages for the purpose of evading provisions of the immigration laws, namely Title 8, United States Code, Sections 1154 and 1186a, which provisions restrict the availability of legal permanent resident status, applied for on the basis of marriage to a United States citizen, to those foreign nationals who have entered into the marriage in good faith, not in exchange for something of value and not for the purpose of procuring the foreign national's admission as an immigrant, and to aid and abet the commission of said offenses, in violation of Title 8, United States Code, Section

1325(c) and Title 18, United States Code, Section 2, in violation of Title 18, United States Code, Section 371.

Specifically, during the Relevant Time Period, co-defendant Jeremy Starnes arranged marriages between United States citizens and foreign nationals, the purpose of which was to obtain immigration benefits for the foreign nationals and money for the United States citizens. With respect to defendant Tina Chaney, in or about July 2002, Starnes informed Chaney that she could earn $5,000 by entering into a marriage with a foreign national, the purpose of which was to obtain an immigration benefit for the foreign national. Starnes further informed Chaney that she would receive the $5,000 in the following increments: (a) $1,000 on the day of the marriage; (b) $1,000 30 days after the marriage; and (c) the remaining balance after the foreign national received his permanent resident card. Chaney agreed to enter into such a marriage.

Starnes then set up a meeting between Tina Chaney and co-defendant Nikolay Nankinov, a foreign national who she met for the first time during this meeting, at a restaurant in Chicago, Illinois. The meeting was attended by Chaney, Nankinov, Starnes, and a man named Edgar, whose last name Chaney did not know, but who she understood was responsible for bringing the foreign nationals into the marriage fraud scheme. During the meeting, Nankinov agreed to pay Chaney as described in the preceding paragraph. During that meeting, Chaney told Nankinov that she already had a boyfriend with whom she was in a serious relationship.

3

On or about August 17, 2002, Tina Chaney and Nankinov participated in a civil marriage ceremony that took place in Chicago, Illinois. Starnes drove Chaney to the ceremony and Nankinov arrived separately. At the time, Chaney had no relationship with Nankinov other than the financial relationship that had been discussed during the meeting with Starnes and Nankinov at the restaurant in Chicago. Further, the sole purpose of the marriage was to gain an immigration benefit for Nankinov and $5,000 for Chaney. Following the marriage ceremony, Chaney, Nankinov, Starnes and the man named Edgar went to dinner at a restaurant. During dinner, photographs were taken of Chaney and Nankinov. Chaney understood that the photographs were being taken to create evidence that her marriage to Nankinov was legitimate, which it was not. Following dinner, Starnes gave Chaney an envelope containing $1,000 cash.

Approximately one month after the sham marriage, Nankinov gave Chaney another $1,000 cash. Months later, Nankinov also paid medical bills associated with an elective cosmetic surgery that Chaney underwent. At no time did Chaney and Nankinov live together as husband and wife.

Some time after Tina Chaney and Nankinov's marriage ceremony, Chaney met Nankinov at an attorney's office where they completed immigration paperwork seeking to adjust Nankinov's immigration status based on the fraudulent marriage.

On or about December 6, 2005, Tina Chaney and Nankinov attended an immigration interview conducted by United States Citizenship and Immigration Services. During the

immigration interview, Chaney and Nankinov, while under oath, falsely held themselves out as being a couple that had entered into a legitimate marriage, well knowing that their statements were false. As described above, their marriage was a sham and was entered into so Chaney could profit financially and so Nankinov could receive an immigration benefit.

During the course of conduct described above, Tina Chaney was aware that her aunt, co-defendant Tammy Daniels, and her uncle, co-defendant Fred Chaney, had also entered into fraudulent marriages that had been arranged by Jeremy Starnes.

## Maximum Statutory Penalties

7. Defendant understands that the charge to which she is pleading guilty carries the following statutory penalties:

    a. A maximum sentence of 5 years' imprisonment. This offense also carries a maximum fine of $250,000. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

    b. In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which she has pled guilty, in addition to any other penalty imposed.

## Sentencing Guidelines Calculations

8. Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing

Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

9. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a. **Applicable Guidelines.** The Sentencing Guidelines to be applied in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2006 Guideline Manual.

b. **Offense Level Calculations.**

i. The base offense level for the charge in Count One of the indictment is 11, pursuant to Guideline § 2L2.1(a), which applies pursuant to Guideline § 2X1.1(a).

ii. There should be no adjustment of defendant's offense level for her role in the offense.

iii. Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for her criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for her actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested

financial information relevant to her ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

    iv.  In accord with Guideline § 3E1.1(b), defendant has timely notified the government of her intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

   c.  **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal three, and defendant's criminal history category is II;

    i.  On January 26, 1998, defendant was convicted of aggravated battery in the Circuit Court of Cook County, and was sentenced to 24 months probation. Pursuant to Guideline § 4A1.1(c), defendant receives one criminal history point.

    ii.  On October 19, 1998, defendant was convicted of child neglect in the Circuit Court of Cook County, and was sentenced to one year supervision. Pursuant to Guideline § 4A1.1(c), defendant receives one criminal history point.

      iii.    On December 21, 2005, defendant was convicted of damage to property in the Circuit Court of Cook County, and was sentenced to one year supervision. Pursuant to Guideline § 4A1.1(c), defendant receives one criminal history point.

    d.    **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 9, which, when combined with the anticipated criminal history category of II, results in an anticipated advisory Sentencing Guidelines range of 6 to 12 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

    e.    Defendant and her attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw her plea on the basis of the Court's rejection of these calculations.

    f.    Both parties expressly acknowledge that this plea agreement is not governed by Fed.R.Crim.P. 11(c)(1)(B), and that errors in applying or interpreting any of the

Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw her plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

## Agreements Relating to Sentencing

10. The government agrees to recommend that sentence be imposed within the applicable guidelines range and to make no further recommendation concerning at what point within the range sentence should be imposed.

11. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Plea Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw her guilty plea.

12. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a check or money order payable to the Clerk of the U.S. District Court.

13. After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining count of the indictment as to this defendant.

## Presentence Investigation Report/Post-Sentence Supervision

14. Defendant understands that the United States Attorney's Office in its submission to the Probation Department as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against her, and related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing.

15. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of her financial circumstances, including her recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of her sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

16. For the purpose of monitoring defendant's compliance with her obligations to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns

10

(together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## **Acknowledgments and Waivers Regarding Plea of Guilty**

### Nature of Plea Agreement

17. This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 07 CR 364.

18. This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

## Waiver of Rights

19. Defendant understands that by pleading guilty she surrenders certain rights, including the following:

    a. **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against her, and if she does, she would have the right to a public and speedy trial.

        i. The trial could be either a jury trial or a trial by the judge sitting without a jury. Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

        ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and her attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

        iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict her unless, after hearing all the evidence, it was persuaded of her guilt beyond a reasonable doubt and that it was to

consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

      iv.    If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

      v.    At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and her attorney would be able to cross-examine them.

      vi.    At a trial, defendant could present witnesses and other evidence in her own behalf. If the witnesses for defendant would not appear voluntarily, she could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

      vii.    At a trial, defendant would have a privilege against self-incrimination so that she could decline to testify, and no inference of guilt could be drawn from her refusal to testify. If defendant desired to do so, she could testify in her own behalf.

      b.    **Appellate rights.** Defendant further understands she is waiving all appellate issues that might have been available if she had exercised her right to trial, and may only appeal the validity of this plea of guilty and the legality of the sentence imposed.

13

Defendant understands that any appeal must be filed within 10 calendar days of the entry of the judgment of conviction.

      c.    Defendant understands that by pleading guilty she is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to her, and the consequences of his waiver of those rights.

20.    By entering this plea of guilty, defendant also waives any and all right the defendant may have, pursuant to 18 U.S.C. § 3600, to require DNA testing of any physical evidence in the possession of the Government. Defendant fully understands that, as a result of this waiver, any physical evidence in this case will not be preserved by the Government and will therefore not be available for DNA testing in the future.

### Other Terms

21.    Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

### Conclusion

22.    Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

23.    Defendant understands that her compliance with each part of this Plea Agreement extends throughout the period of her sentence, and failure to abide by any term

of the Agreement is a violation of the Agreement. Defendant further understands that in the event she violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

24.     Should the judge refuse to accept defendant's plea of guilty, this Plea Agreement shall become null and void and neither party will be bound thereto.

25.     Defendant and her attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

26. Defendant acknowledges that she has read this Plea Agreement and carefully reviewed each provision with her attorney. Defendant further acknowledges that she understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 9/13/2007

PATRICK J. FITZGERALD by
United States Attorney

TINA CHANEY
Defendant

CLIFFORD C. HISTED
Assistant U.S. Attorney

JOHN T. GONNELLA
Attorney for Defendant

16